**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICROSYS COMPUTING, INC.,** | ) | **CASE NO.   4:05 CV 2205** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DYNAMIC DATA SYSTEMS, LLC,** | ) | **MEMORANDUM OPINION** |
| **et al.,** | ) | **AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court upon Defendant Kansas Advantage Network, LLC'S Motion To Dismiss For Lack Of Personal Jurisdiction Or, In the Alternative, To Dismiss For  Improper Venue (Dkt. #9).

## I.  BACKGROUND

Plaintiff, MICROSYS Computing, Inc., ("Microsys") is an Ohio Corporation, with its principal place of business located in Ohio.  (Dkt. #1, Ex. 1, Complaint).  Microsys is in the business of creating, developing and selling software.  (Complaint ¶ 1).  One of the software programs which Microsys has successfully created, developed and sold is a

software program known as "MicroMD."  (Dkt. #12, Ex. A, Kumar Affidavit (Kumar Aff. ¶ 6).

Defendant, Dynamic Data Systems, LLC ("DDS"), is a Nevada limited liability company, consisting of two members, Joe Mangornchai and Daniel Fioroni.  (Dkt. #18). Beginning in May 2003, Joe Mangornchai ("Mangornchai") pursued negotiation of an agreement with Microsys whereby DDS would become an authorized reseller of the MicroMD software.  (Kumar Aff. ¶¶ 10–14).  On May 12, 2003, as part of his negotiations, Mangornchai requested and received an internet demonstration of the MicroMD software program.  (Kumar Aff. ¶ 11).

Meanwhile, on May 15, 2003, Mangornchai, as President of Medicom Holding Corp. ("Medicom") and Darrel McCool ("McCool"), as Senior Vice President of Medical Service Corp. ("MSC") executed an Operating Agreement for Defendant Kansas Advantage Network, LLC ("KAN").[1]  (Dkt. #9, Ex. B).  Mangornchai and McCool are each Managers of KAN and are authorized to act on its behalf.  (Id. at 10; McCool Aff ¶ 7).  The stated business nature of KAN is to deliver management and information technology services to medical practice groups.  (Dkt. #9, Ex. B at 7).  Part of KAN's business, therefore, consists of furnishing medical providers access to medical practice management software.  (McCool Aff. ¶ 4).  KAN and DDS, however, are two separate corporate entities and KAN is not an affiliate of DDS.  (McCool Aff. ¶ 15).  KAN's offices are located in Kansas, and all of

---

[1]Ten months later, on March 8, 2004, KAN filed its Articles of Organization with the State of Kansas.  (Dkt. #9, Ex. C; McCool Aff. ¶ 6).

KAN's clients are currently located in Kansas and Missouri.  (McCool Aff. ¶¶ 9, 13).  DDS and KAN do, however, have the same telephone number, the same facsimile transmission number and both are located in the same office building.  (Kumar Aff. ¶ 29).

Throughout the late spring and summer of 2003, Mangornchai continued negotiations with Microsys regarding the MicroMD software.  (Kumar Aff. ¶¶ 10–14; Mangornchai Aff. ¶ 9).  On May 22, 2003, Mangornchai traveled to the offices of Microsys in Mahoning County, Ohio to conduct a business meeting and discuss issues involved with DDS becoming an authorized reseller of MicroMD.  (Kumar Aff. ¶ 13; Dkt. #16, Affidavit of Joe Mangornchai ("Mangornchai Aff.") ¶ 9).  From June 9 to 11, Mangornchai and DDS employee Karen Thrasher attended a reseller training program held at Microsys's place of business in Mahoning County, Ohio.  (Kumar Aff. ¶ 24 and Attachment #1; Mangornchai Aff. ¶ 11).  And on August 7, Mangornchai conducted a telephone conference call with Microsys regarding his potential purchase of MicroMD for use by DDS.  (Kumar Aff. ¶ 12).

Finally, on December 4, 2003, DDS entered into a contract with Microsys (the "Resale Agreement").  (Complaint, ¶ 7, Ex. A to the Complaint ("Resale Agreement"); Kumar Aff. ¶ 7).  Mangornchai negotiated the terms and conditions of the Resale Agreement. (Kumar Aff. ¶ 10; Mangornchai Aff.).  Under the Resale Agreement, Microsys appointed DDS as an authorized reseller for the term of the Resale Agreement to act as a seller and distributor of Microsys products (including the MicroMD software) primarily in the territory located in Shawnee Mission, Kansas.  (Kumar Aff. ¶ 18).  As consideration for its authorized reseller status, DDS agreed to pay Microsys for the use of the MicroMD

3

software program pursuant to the fees set forth in the schedules incorporated into the Resale Agreement.  (Id. ¶ 16). Pursuant to the Resale Agreement, DDS's status as a Microsys authorized reseller was non-transferable.  (Kumar Aff. ¶ 19).  The Resale Agreement required that all actions or suits under the Agreement be brought only in federal or state courts of Ohio.  (Complaint, Ex. A at 8).

Since the inception of the Resale Agreement, Microsys has provided via telephone, e-mail and other correspondence support services—i.e., resolving MicroMD software related issues, providing MicroMD updates, assisting with software and hardware installation issues, providing ongoing technical and administrative support—to DDS. (Kumar Aff. ¶¶ 21–22).  Microsys also provided DDS owners, managers and employees with training sessions held in Mahoning County, Ohio.  (Id. ¶ 23).  For example, Microsys conducted a reseller retreat from July 18 through July 21, 2004 held in Mahoning County. (Id. ¶ 25).  DDS employees Michael Van Laere, Leigh Kiernan, Karen Thrasher and Deanna Kovac[2] attended the July retreat.  (Kumar Aff. Attachment #2.)

At some point, KAN and DDS entered into an agreement pursuant to which DDS

---

[2]Plaintiff alleges that Deanna (Dee) Kovac ("Kovac") is a KAN employee.  In support, Plaintiff provides a "Independent Sales Client Enrollment" form allegedly identifying Kovac as a contact for KAN.  (Kumar Aff. Attachment #3).  The form presents several problems.  It is not clearly dated, it fails to evidence who completed the form, and it is unclear in what capacity Kovac is listed as a contact.  The form identifies DDS as the "reseller," KAN as the "billing service," and Dee Kovac as a "contact" beneath the name and address for Atchison Family Medicine, PA.  The form affords no conclusions as to Kovac's employer and certainly fails to conclusively demonstrate that Kovac is both an employee of KAN and DDS.  (Kumar Aff. Attachment #3).

would provide software support and hardware maintenance to KAN.  (McCool Aff. ¶ 14).

KAN was DDS's first client and the sale of the software license to KAN was DDS's first

sale under the Resale Agreement between Microsys and DDS.   (Kumar Aff. ¶ 37).

Microsys alleges that in April 2004, DDS sold KAN the license of MicroMD and that KAN

is now conducting itself as a reseller of MicroMD without paying the required license fees.

(Id. ¶¶ 36, 38).

Microsys filed a Complaint in the Mahoning County Court of Common Pleas

asserting claims against both KAN and DDS.   (Dkt. #1, Ex. 1 ("Complaint").   The

Complaint asserts against KAN a claim of unjust enrichment and a claim of conspiracy.

(Complaint at counts 2 and 4).  The Complaint asserts against DDS a breach of contract

claim and claims for unjust enrichment, conversion, conspiracy and breach of good faith

and fair dealing.  (Complaint at counts 1–5).

DDS removed the action to this Court, and KAN joined in the removal.  (Dkt. #1).

KAN, subsequently, moved to be dismissed from the action for lack of personal

jurisdiction.  (Dkt. #9).

## II.  STANDARD OF REVIEW

The party seeking to assert personal jurisdiction bears the burden of demonstrating

that such jurisdiction exists.  See  Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883,

887–88 (6th Cir. 2002).  In assessing whether that burden has been satisfied, a district court

has three procedural alternatives: "[it] may determine the motion on the basis of affidavits

alone; it may permit discovery in aid of the motion; or it may conduct an evidentiary

hearing on the merits of the motion." <u>Dean v. Motel 6 Operating L.P.</u>, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting <u>Serras v. First Tennessee Bank Nat'l Ass'n</u>, 875 F.2d 1212, 1214 (6th Cir. 1989)).

Where, as here, the Court proceeds on the basis of the pleadings, motions and supporting affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction.  <u>See</u> <u>id</u>.  The plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction."  <u>Neogen</u>, 282 F.3d at 887 (quoting <u>Provident Nat'l Bank v. California Fed. Savings</u>, 819 F.2d 1212, 1214 (6th Cir. 1989)); <u>see</u> <u>also</u> <u>Serras</u>, 875 F.2d at 1215.  The Court must consider the pleadings and affidavits in a light most favorable to the plaintiff. <u>See</u> <u>Bird v. Parsons</u>, 289 F.3d 865, 871 (6th Cir. 2002).   "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991); <u>see</u> <u>also</u> <u>CompuServe v. Patterson</u>, 89 F.3d 1257, 1262 (6th Cir. 1996).

## III.  LAW AND ANALYSIS

Defendants removed the action to this Court on the basis of diversity subject matter jurisdiction.  To determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, the Court must apply the law of the state in which it sits, subject to due process limitations. <u>See</u> <u>Welsh v. Gibbs</u>, 631 F.2d 436, 439 (6th Cir. 1980); <u>see</u> <u>also</u> <u>Reynolds v. Int'l Amateur Athletic Fed'n</u>, 23 F.3d 1110, 1115 (6th Cir. 1994); <u>In-Flight Devices Corp. v. Van Dusen Air, Inc.</u>, 466 F.2d 220, 224 (6th Cir. 1972).  "The exercise

6

of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000).

The Supreme Court of Ohio has held that the state's long-arm statute does not reach to the limits of the Due Process Clause. See Goldstein v. Christiansen, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n.1 (1994) (finding "erroneous" a lower court's statement that the Ohio General Assembly had intended to give Ohio courts jurisdiction to the limits of the Due Process Clause). Ohio's long-arm statute, therefore, is not to be equated with the limits of federal due process. See Brunner v. Hampson, 441 F.3d 457, 465 (6th Cir. 2006); Hildebrand v. Steck Mfg. Company, Inc., 279 F.3d 1351, 1354–57 (6th Cir. 2002). Accordingly, when Ohio's long-arm statute is the basis for personal jurisdiction, the personal jurisdiction analysis requires separate discussions of whether the defendant is amenable to suit under Ohio's long-arm statute and whether due process requirements of the Constitution are met.[3]   See Hildebrand, 279 F.3d at 1357; Walker v. Concoby, 79 F. Supp. 2d 827, 831 (N.D. Ohio 1999).

---

[3]In some notable instances the Sixth Circuit has foregone this two-step approach. See Bird, 289 F.3d at 871 (recognizing that Ohio's long-arm statute is not coterminous with federal constitutional limits, but foregoing examination of the long-arm statute and focusing analysis on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice"); Calphalon, 228 F.3d at 721 (foregoing examination of the long-arm statue and focusing analysis on constitutional due process requirements). The Sixth Circuit, however, recently clarified application of the Ohio long-arm statue and emphasized that courts must not merge together Ohio long-arm jurisdiction and Due Process inquiries. See Brunner, 441 F.3d at 464–65.

There are two kinds of personal jurisdiction that can be exercised under Ohio law:

Jurisdiction may be found to exist either *generally*, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or *specifically*, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.

Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996) (citation omitted) (emphasis added).  Ohio's long-arm statute pertains to specific jurisdiction as the statute expressly requires that the injury arise out of the contacts with Ohio.  See OHIO REV. CODE § 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.").

Ohio's long-arm statute provides, in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this

8

state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

OHIO REV. CODE § 2307.382(A).[4]

Microsys asserts that "KAN is the alter-ego affiliate of DDS" and that "[w]hen the common owners and managers of DDS transacted business with Microsys in Ohio and then formed KAN to deliberately circumvent the payment of required license fees for the use of Microsys software, their business transactions in Ohio caused injury in Ohio" thereby satisfying the requirements of Sections 2307.382(A)(1) and (A)(3). Although, Microsys fails to assert this alter ego theory of personal jurisdiction in the Complaint, it attempts to articulate this theory in its response to KAN's motion by relying on facts asserted in the Complaint and facts presented in a supporting affidavit to it's responsive brief. In evaluating Microsys's prima facie claim of personal jurisdiction over KAN, the Court shall consider all pleadings, motions and facts presented by Microsys. See Neogen, 282 F.3d at 887; see also Malone v. Windsor Casino Ltd., 14 Fed. Appx. 634, 636 (6th Cir. 2001) (considering whether plaintiff presented a prima facie case for personal jurisdiction by

---

[4]Rule 4.3 of the Ohio Rules of Civil Procedure provides that service of process is proper upon a nonresident corporation where "a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose." The rule is coexistent and consistent with Ohio's long-arm statute. See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990).

examining plaintiff's complaint as well as the facts presented in plaintiff's other pleadings and affidavits). But see Polskie Linie Oceaniczne v. Seasafe Transport A/S, 795 F.2d 968, 972 (11th Cir.1986) ("First, the plaintiff must allege sufficient facts in his complaint to initially support long-arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute.  If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.").

"Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002) (citing Howard v. Everex Sys., Inc., 228 F.3d 1057, 1069 n. 17 (9th Cir. 2000); Minnesota Mining & Mfg. Co. v. Eco Chem Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 903 (2d Cir. 1981); Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 637–38 (8th Cir.1975); Huth v. Hillsboro Ins. Mgmt., Inc., 72 F.Supp.2d 506, 510 (E.D. Pa.1999); Kinetic Instruments, Inc. v. Lares, 802 F.Supp. 976, 985 (S.D.N.Y. 1992)).  Normally, courts apply the alter ego theory of personal jurisdiction to parent-subsidiary relationships. See Howard, 228 F.3d at 1069 n. 17 ("Although jurisdiction over a subsidiary does not automatically

10

provide jurisdiction over a parent…where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well.").  The alter ego theory of personal jurisdiction, in the parent-subsidiary context allows that "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction. If the court finds one entity to be the alter ego of the other, jurisdiction over the subsidiary results in jurisdiction over the non-resident parent."  Danton v. Innovative Gaming Corp. of America, 246 F.Supp.2d 64, 72 (D. Me. 2003).

The Court's research reveals several unreported cases within the Sixth Circuit endorsing the use of the alter ego theory to exercise personal jurisdiction.  See Flynn v. Greg Anthony Construction Co., Inc., 95 Fed. Appx. 726, 736–38 (6th Cir. 2003); Niemi v. NHK Spring Co. Ltd., No. 3:03 CV 7512, 2006 WL 954248, *1 (N.D. Ohio April 12, 2006); Simsa v. Gehring L.P., No. 05 CV 72159, 2006 WL 467914, *4 (E.D. Mich. Feb. 24, 2006); Bradford Co. v. AFCO Mfg., No. 1:05 CV 449, 2006 WL 143343, *4 (S.D. Ohio Jan. 19, 2006); Invacare Corp. v. Sunrise Medical Holdings, Inc., No. 1:04 CV 1439 (N.D. Ohio Dec. 14, 2004); Medical Distribution, Inc. v. Quest Healthcare, Inc., 2002 WL 32398447, *4–*5 (W.D. Kty. Feb. 1, 2002); see also Warren v. Dynamics Health Equipment Mfg. Co., 483 F.Supp. 788, 792–93 (M.D. Tenn. 1980).  These cases comport with other federal cases permitting courts "to 'pierce the corporate veil' of the subsidiary and impute personal jurisdiction from the subsidiary to the parent."  Invacare Corp. v.

11

Sunrise Medical Holdings, Inc., 2004 WL 3418915 at *7.  Indeed, the Sixth Circuit has

extended application of the alter ego theory of personal jurisdiction beyond the parent-

subsidiary context and concluded that assessing whether one company is the alter ego of

another company involves the application of a test identical to determine whether a

subsidiary is the alter ego of the parent.  See Flynn v. Greg Anthony Construction Co., Inc.,

95 Fed. Appx. at 736 (finding plaintiffs sufficiently demonstrated alter ego relationship and

imputing personal jurisdiction from one company to another company).  The Court,

therefore, concludes that it may exercise personal jurisdiction over a corporate entity

premised on its corporate contacts with the forum state where a plaintiff alleges facts

sufficient to prove that another corporation served as an alter ego for the corporate entity's

benefit.  See Medical Distribution, 2002 WL 32398447 at *5.

In applying the alter ego theory of personal jurisdiction, the Court, because this is

an action based on diversity subject matter jurisdiction, must apply Ohio alter ego doctrine.

See Welsh, 631 F.2d at 439.  While Ohio law sets forth a formal test for veil-piercing, "the

legal conception [of alter ego liability] has historical antecedents in both federal and state

law. Such cases may provide sound analogies or insightful analyses relating to the formal

test set forth in [Ohio law] without usurping its authority."  See Music Express

Broadcasting Corp. v. Aloha Sports, Inc., 161 Ohio App. 3d 737, 742, 831 N.E.2d 1087,

1091 (Ohio App. 11th Dist. 2005).  The Court, therefore, in addition to Ohio law, relies on

Sixth Circuit case law applying the alter ego theory of personal jurisdiction in so far as such

cases are consistent with Ohio law pertaining to the alter ego doctrine.[5]

The Ohio alter ego doctrine is part of the first prong of the <u>Belvedere</u> test for piercing the corporate veil.  <u>See</u> <u>Taylor Steel, Inc. v. Keeton</u>, 417 F.3d 598, 605 (6th Cir. 2005) (citing <u>Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.</u>, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, 1085 (1993)); <u>accord</u> <u>Music Express</u>, 831 N.E.2d at 1090. The alter ego doctrine allows that "the corporate form can be disregarded…when control is so complete that the corporation has no separate will, mind, or existence."  <u>See</u> <u>Belvedere</u>, 617 N.E.2d at 1085.[6]  It requires that a plaintiff "show that the individual and

_____

[5] Almost all of the Sixth Circuit case law concerning the alter ego theory of personal jurisdiction relates to patent infringement cases.  Actions concerning allegations of patent infringement require the application of the law of the Federal Circuit Court of Appeals.  <u>See</u> <u>Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1358 (Fed. Cir. 1998).  For example, the case <u>Bradford Co. v. AFCO Mfg.</u>, No. 1:05 CV 449, 1006 WL 143343 (S.D. Ohio Jan. 19, 2006) applies the alter ego theory of personal jurisdiction to the Ohio long-arm statute.  Application of the theory, however, in <u>Bradford</u> concerns federal common law alter ego doctrine, because <u>Bradford</u> is a suit for patent infringement.  <u>Id</u>. Case law within the Sixth Circuit has applied the alter ego theory of personal jurisdiction either within the context of federal common law or to a jurisdiction outside of Ohio.  <u>See</u> <u>Flynn</u>, 95 Fed. Appx. at 736–38 (applying District of Columbia's long-arm statute and using federal common law alter ego doctrine); <u>Niemi</u>, 2006 WL 954248 at *1(applying Ohio long-arm statute, but relying on determination of alter ego issue made by tranferor court under Michigan alter ego doctrine); <u>Simsa v. Gehring L.P.</u>, No. 05 CV 72159, 2006 WL 467914, *4 (applying Michigan long-arm statute); <u>Bradford Co. v. AFCO Mfg.</u>, No. 1:05 CV 449, 2006 WL 143343, *4 (S.D. Ohio Jan. 19, 2006) (applying Ohio long-arm statute and using federal common law alter ego doctrine); <u>Invacare Corp. v. Sunrise Medical Holdings, Inc.</u>, No. 1:04 CV 1439 (N.D. Ohio Dec. 14, 2004) (applying Ohio long-arm statute and using federal common law alter ego doctrine).  Indeed, the Court's research reveals no Ohio or federal case law applying the alter ego theory of personal jurisdiction within the context of Ohio alter ego doctrine.

[6]Establishment of alter ego *liability* requires that a plaintiff additionally demonstrate "the control is exercised to commit fraud or an illegal act which injures the plaintiff."

corporation are fundamentally indistinguishable." Id.  In deciding whether a company is an alter ego of an individual, Ohio courts consider such factors as whether corporate formalities are observed, whether corporate records are kept, whether corporate funds are commingled with personal funds, whether a corporation is financially independent, whether corporate property was used for a personal purpose, and whether the corporation was a mere facade for the operations of the individual.  See LeRoux's Billyle Supper Club v. Ma, 77 Ohio App.3d 417, 422–23, 602 N.E.2d 685, 689 (Ohio App. 6th Dist. 1991); accord Taylor Steel, 417 F.3d at 605.  Sixth Circuit law examining the alter ego relationship between two corporations adopts these factors and specifies additional factors: sharing the same employees and corporate officers, engaging in the same business enterprise, having the same address and phone line, and using the same assets (i.e., letterhead, equipment), completing the same jobs, not maintaining separate books, tax returns and financial statements, and exerting control over the daily affairs of another corporation.  See Flynn, 95 Fed. Appx. at 736–37; Invacare, 2004 WL 3418915 at *8.

Turning to the arguments before the Court, no party disputes that DDS is subject to

Belvedere, 617 N.E.2d at 1085.  The exercise of personal jurisdiction over an alleged alter ego, however, requires application of a "less onerous standard" than that necessary for piercing the corporate veil for liability purposes. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (noting that for jurisdictional purposes, unlike for liability purposes, use of control to commit a fraud or wrong is not required).  Therefore, for purposes of examining the alter ego theory of personal jurisdiction, the Court's analysis concerns only the alter ego *doctrine*—factors demonstrating that control is so complete that the corporation has no separate will, mind, or existence, i.e., common ownership, common control, financial dependency.  See id.; Flynn, 95 Fed. Appx. at 736–37; Invacare, 2004 WL 3418915 at *8.

14

the personal jurisdiction of this Court.  Microsys, accordingly, asserts that DDS's contacts

with Ohio may be imputed to KAN under the alter ego theory of personal jurisdiction.  The

record provides several facts which partially support this theory.  DDS and KAN share a

common manager: Mangornchai is manager for both DDS and KAN.  Additionally, DDS

and KAN may share a common owner: Mangornchai is an owner of DDS, and he signed

the operating agreement for KAN on behalf of Mediacom, a corporation for which he holds

the office of President.  KAN and DDS share the same business enterprise—furnishing

medical providers with medical practice management software.  KAN and DDS also share

the same phone line and are located in the same building.  KAN and DDS do not share the

same employees, but then, KAN has no employees.  Finally, KAN and DDS resell the same

product—the MircoMD software.  As Microsys explains,

> KAN and DDS are engaged in similar business enterprises and both are
> reselling the MicroMD software program to third parties.  KAN cannot
> obtain the license codes for MicroMD without the complete assistance of
> DDS.  DDS must go to the Microsys interactive website to download the
> license codes for MicroMD.  DDS then gives these license codes to KAN for
> resale.  KAN cannot obtain the license codes for MicroMD unless it obtains
> them from DDS.

(Dkt. #12 at 5–6 (citing Kumar Aff. ¶¶ 41–45)).

These, facts, while they weigh in favor of Microsys's alter ego theory of jurisdiction,

fail to sufficiently demonstrate that KAN and DDS operate, in fact, as one business or are

fundamentally indistinguishable.  See Belvedere, 617 N.E.2d at 1085.  For example, in

Flynn the Sixth Circuit imputed the contacts of one company to another where the two

companies shared the same business enterprise, the same management, the same address,

15

the same phone lines, and the same assets.  See Flynn, 95 Fed. Appx. At 737.  But Flynn

also discussed and relied on evidence in the record demonstrating the companies had

commingled work projects by interchanging their services on the same job and by using the

same equipment and employees.  Id.  Microsys's description of the arrangement between

KAN and DDS fails to evidence this commingling of work.  DDS appears to be serving

KAN, its client, by providing access to MicroMD.  The provision of this access may be

improper, but it describes the provision of a product by DDS to KAN, not the sharing of an

asset nor the commingling of work on a project.  Microsys provides no evidence that KAN

and DDS share the same customers or that KAN holds itself out as being DDS.[7]  In short,

Microsys's description of Kan and DDS's interaction fails to demonstrate DDS has control

---

[7]Ajit Kumar, owner and president of Microsys, avers that in "end user surveys"
clients previously identified as KAN enrollees stated they did not know of KAN's existence
and that they only dealt with DDS regarding the MicroMD software.  (Kumar Aff. ¶ 46).
This averment is, of course, hearsay.  In contrast to a motion under Rule 56, a court may
consider hearsay in a Rule 12(b)(2) motion if "the evidence bears circumstantial indicia of
reliability so that it very well could be admissible at trial notwithstanding its hearsay
nature."  See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1562 (Fed.
Cir. 1994).  The record fails to provide facts circumstantially supporting the reliability of
this averment.  Microsys fails to provide these identified end user surveys, identify the
clients who completed these surveys or explain how these unidentified clients came to be
previously identified as KAN enrollees.  Other averments by Ajit Kumar, on which the
Court's analysis relies, are supported by the terms of the Resale Agreement and other
submitted documentation, or such averments are confirmed by Mangornchai and McCool's
affidavits.  However, no such circumstantial support exists for this, particular averment.
Considering the significant weight this averment, if proven to be true at trial, would have
in demonstrating the control DDS exercises over KAN, facts in the record must
circumstantially support such an averment before it may demonstrate evidence of
Microsys's prima facie case.
.

16

over KAN's actions to the extent KAN had no "separate mind, will, or existence." See Belevedere, 617 N.E.2d at 1085.

Moreover, other Sixth Circuit cases and Ohio law require demonstration of financial dependency between corporations and demonstration of nonobservance of corporate formalities. See Invacare, 2004 WL 3418915 at *8; LeRoux, 602 N.E. 2d at 689. Microsys fails to demonstrate the state of financing between DDS and KAN, describe any commingling of funds between DDS and KAN, or detail KAN's nonobservance of corporate formalities. Id.; see also AT&T Global Information Solutions Co. v. Union Trade Car Co., 29 F.Supp.2d 857, 866–67 (S.D. Ohio 1998) (finding alter ego relationship between parent and subsidiary under Ohio alter ego doctrine where parent owned all capital stock in subsidiary, subsidiary had inadequate capital, parent and subsidiary commingled funds, and employees and corporate officers overlapped).

Although several factors weigh in favor of recognizing an alter ego relationship between KAN and DDS, Microsys fails to provide sufficient facts to overcome the general presumption that one company operates independently from another.  Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation.  See Invacare, 2004 WL 3418915 at *8 (stating general presumption that a subsidiary operates independent of a parent).  The record ultimately fails to persuade the Court that DDS exerts control over the will, mind, or existence of KAN. See Belvedere, 617 N.E. 2d at 1085.  Accordingly, the Court finds there is no alter ego relationship between KAN and DDS, and DDS's jurisdictional contacts with Ohio may not

17

be imputed to KAN.

Next, the Court examines KAN's individual contacts with Ohio.  Microsys asserts that sections (A)(1) (transacting business in Ohio), (A)(3) (causing tortious injury in Ohio), (A)(6) (causing tortious injury by an act outside Ohio) and (A)(4) (deriving revenue from services rendered in Ohio) of the Ohio long-arm statue apply to KAN's conduct.  See OHIO REV. CODE § 2307.382.  Section (A)(4) is facially inapplicable to KAN.  Extending jurisdiction pursuant to this subsection requires that the non-resident defendant derive substantial revenue from "goods used or consumed or services rendered *in this state*."  See Irizarry v. East Longitude Trading Co. Ltd., 296 F.Supp.2d 862 (N.D. Ohio 2003).  Here, Microsys does not claim that KAN derived income from its conduct in Ohio, but rather from KAN's alleged misconduct in Kansas and Missouri—conducting business as an unauthorized reseller.  Accordingly, Microsys fails to demonstrate that KAN received revenue for conduct in Ohio.  See id.

The term "transacting any business" as used in the Ohio long-arm statute is given broad interpretation.  See Brunner, 441 F.3d at 465; accord Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990).  "Transact" encompasses "to carry on business" and "to have dealings" and is broader than the word "contract."  See Goldstein, 638 N.E.2d at 544; U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc., 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052 (1994). Solicitation of business by an out-of-state corporation is a factor to be assessed in determining whether the foreign company was transacting business in Ohio for purposes

18

of submitting to personal jurisdiction.  See U.S. Sprint, 624 N.E.2d at 1052.  In soliciting business, however, the contacts between the non-resident and Ohio must create a "substantial connection."  See id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Microsys's arguments for asserting personal jurisdiction over KAN stem from the premise that all contacts made by Mangornchai with the state of Ohio were on behalf of both DDS and KAN.  Certainly, "when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 n. 22 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).  Microsys, however, fails to demonstrate that Mangornchai's actions were carried out on behalf of KAN.  It is clear that Mangornchai solicited business in Ohio and in doing so created a substantial connection with Ohio.  See U.S. Sprint, 624 N.E.2d at 1052 (frequent telephone communication between non-resident and Ohio and frequent order and receipt of goods and services by non-resident from Ohio sufficient to justify personal jurisdiction under the Ohio long-arms statute).  As discussed supra, it is also clear that Mangornchai is a manager of both DDS and KAN.  Mangornchai, however, avers that his contacts with Ohio were made on behalf of DDS, not KAN, and the evidence before the Court supports this averment.

When Mangornchai initiated negotiations with Microsys, he indicated his intent to form a contractual relationship between Microsys and DDS.  These negotiations conducted by Mangornchai then resulted in a contract between Microsys and DDS, designating DDS

19

as a authorized reseller of MicroMD.  Accordingly, Mangornchai, in negotiating and achieving a contract between DDS and Microsys, transacted business in the state of Ohio. Mangornchai's actions, however, were on behalf of DDS, not KAN.  Consequently, KAN did not "transact business" in Ohio or "cause tortious injury by an action" in Ohio.  See OHIO REV. CODE §§ 2307.382(A)(1), (A)(3).

Additionally, because the record demonstrates no contacts by KAN with Ohio, KAN cannot reasonably expect that its alleged tortious actions outside Ohio would subject it to Ohio's jurisdiction.  See OHIO REV. CODE § 2307.382(A)(6).  Microsys is asserting specific jurisdiction over KAN.  The Ohio long-arm statute places an additional requirement on plaintiffs asserting specific jurisdiction:  "[r]egardless of whether the basis for long-arm jurisdiction is transacting business or contracting to supply services or goods in Ohio, the party asserting specific jurisdiction must also prove that the cause of action *arose from the defendant's contacts with the state*."  Brunner, 441 F.3d at 464 (citing OHIO REV. CODE § 2307.382(C)) (emphasis added).  Microsys fails to establish the conspiracy[8] or unjust enrichment claims asserted against KAN arise from KAN's contacts with Ohio; instead Microsys argues that Mangornchai and DDS's contacts with Ohio apply to KAN as well.

---

[8]The Court notes that neither the Ohio courts nor federal courts applying the Ohio long-arm statute have adopted a conspiracy theory of personal jurisdiction which would impute an alleged co-conspirator's jurisdictional contacts with the forum to a foreign defendant.  See Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc., 23 F.Supp.2d 796 (N.D. Ohio 1998).  Microsys's Complaint asserts a claim of conspiracy against both DDS and KAN.  This claim, however, cannot support the exercise of personal jurisdiction over KAN where KAN has no contacts with Ohio.  Id.

It is well established that the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction.  See Helicopteros, 466 U.S. at 417. No evidence before the Court demonstrates Mangornchai or DDS's contacts with Ohio were connected to KAN.  Microsys fails to demonstrate that Mangornchai's contacts with Ohio "proximately result from actions by [KAN itself] that create a 'substantial connection' with the forum State," and, therefore, that KAN's conduct and connection with Ohio are such that it "should reasonably anticipate being haled into court there."  CompuServe, 89 F.3d at 1263.

Again, Mangornchai's acts in Ohio consisted of negotiations on behalf of DDS.  The evidence demonstrates only one act of Mangornchai's on behalf of KAN, and that is the formation of KAN, which occurred in Kansas, not Ohio.  Microsys fails to demonstrate that the tort claims asserted against KAN arose from KAN's contacts with Ohio; accordingly, Microsys fails to meet the Ohio long-arm statute's requirement for specific jurisdiction and the Court cannot exercise personal jurisdiction of KAN.  See Brunner, 441 F.3d at 464.

Because Ohio's long-arm statute does not confer personal jurisdiction over KAN, the Court need not address whether exercising jurisdiction over KAN would be proper under a due process analysis.  See Diebold, Inc. v. Firstcard Financial Services, Inc., 104 F.Supp.2d 758, 762; see also Cooper v. Digital Processing Systems, Inc., 182 F.R.D. 242, 252 (N.D. Ohio 1998) ("If the Ohio long-arm statute does not provide a basis for the exercise of personal jurisdiction over the nonresident [party], jurisdiction is unavailable

21

even if the exercise of such would not violate due process."); <u>General Acquisition, Inc. v.</u>

<u>Gencorp Inc.</u>, 766 F.Supp. 1460, 1485 (S.D. Ohio 1990) (same).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss For Lack of Personal

Jurisdiction (Dkt. #9) is **GRANTED**.  Defendant KAN is dismissed from the instant action.

The remaining parties shall appear before the Court for a Case Management Conference to

be scheduled by the Court.

**IT IS SO ORDERED.**


 /s/ *Peter C. Economus*– **08/02/06**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**

22